UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEARNING TECHNOLOGY PARTNERS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNIVERSITY OF THE INCARNATE WORD,<br><br>　　　　Defendant. | Case No. 14-cv-4322-PJH<br><br>**FINAL PRETRIAL ORDER** |

Pursuant to Rule 16(e) of the Federal Rules of Civil Procedure, this final pretrial order is hereby entered and shall control the course of the trial unless modified by a subsequent order.

I. <u>MOTIONS IN LIMINE</u>

　　A.　　Plaintiffs' Motion in Limine No. 1

Plaintiff's first motion in limine to exclude evidence regarding the number of students using services in breach of the exclusivity provision is DENIED.

　　B.　　Plaintiff's Motion in Limine No. 2

Plaintiff's second motion in limine to exclude evidence of the 3-5% discount sought in connection with defendant's counterclaim is DENIED.

　　C.　　Plaintiff's Motion in Limine No. 3

Plaintiff's third motion in limine to exclude evidence of plaintiff's revenue and profit unrelated to defendant is GRANTED.

D.  Plaintiff's Motion in Limine No. 4

Plaintiff's fourth motion in limine to exclude the testimony of defendant's expert Jason Frankovitz is GRANTED in part and DENIED in part.  The parties agree that two out of the three topics covered by the Frankovitz report (specifically, the issue of whether plaintiff's own actions contributed to any usage/capacity issues, and the issue of derivative work) are no longer relevant to any claims at issue.  Thus, to the extent that plaintiff seeks to exclude those portions of the report, the motion is GRANTED.  However, the parties also agree that the third topic covered by the Frankovitz report (whether plaintiff could have discovered or prevented defendant's alleged breach) could be relevant to at least some of defendant's affirmative defenses, and thus, the motion to exclude that portion of the report is DENIED.

E.  Plaintiff's Motion in Limine No. 5

Plaintiff's fifth motion in limine seeks to preclude cross-examination of Reda Athanasios regarding claimed damages arising from labor costs, which are no longer sought in the case.  Because Athanasios' credibility is relevant to other categories of claimed damages, plaintiff's fifth motion in limine is DENIED.

F.  Defendant's Motion in Limine No. 1

Defendant' first motion in limine to preclude plaintiff's damages expert from presenting calculations not disclosed in his expert report is GRANTED in part and DENIED in part.  Plaintiff's expert shall be permitted to offer modified versions of the calculations already contained in the report (for instance, damages for a limited temporal scope), but may not offer calculations based on new damages theories.

G.  Defendant's Motion in Limine No. 2

Defendant's second motion in limine to preclude plaintiff from offering testimony regarding defendant's document retention policy or regarding allegations of lost/destroyed documents is GRANTED.

H.  Defendant's Motion in Limine No. 3

Defendant's third motion in limine to admonish Reda Athanasios regarding the

personal knowledge evidentiary requirement is DENIED.

I.  Defendant's Motion in Limine No. 4

Defendant's fourth motion in limine to preclude plaintiff from presenting evidence or argument that other clients were charged "standard rates" is GRANTED, based on plaintiff's inability to identify any such evidence that was produced during discovery.

J.  Defendant's Motion in Limine No. 5

Defendant's fifth motion in limine to preclude plaintiff from offering "improper character testimony regarding Dr. and Mr. Porter" is GRANTED in part and DENIED in part.  The motion is granted only to the extent that defendant seeks to preclude evidence related to Dr. Porter's alleged mishandling of expenses during previous employment.  Any other character evidence-related issues will be resolved by the court as they arise.

K.  Defendant's Motion in Limine No. 6

Defendant's sixth motion in limine to preclude evidence related to its own profits is GRANTED, for the same reasons as plaintiff's third motion in limine was granted.

L.  Defendant's Motion in Limine No. 7

Defendant's seventh motion in limine to preclude plaintiff from presenting evidence or argument relating to usage/capacity issues is GRANTED in part and DENIED in part.  As mentioned above (in the context of plaintiff's fourth motion in limine), plaintiff's knowledge of the usage/capacity issues could be relevant to defendant's affirmative defenses, so to the extent that plaintiff seeks to introduce evidence for that purpose, the motion is DENIED.  However, to the extent that plaintiff seeks to introduce the evidence for any other purpose (including any alleged damages stemming from the usage/capacity issues), the motion is GRANTED.

II.  DEFENDANT'S DAUBERT MOTION

Defendant seeks to exclude the testimony of plaintiff's damages expert, Mark Cohen.

A.  Legal Standard

Federal Rule of Evidence 702 permits experts qualified by "knowledge,

experience, skill, expertise, training, or education" to testify "in the form of an opinion or otherwise" based on "scientific, technical, or other specialized knowledge" if that knowledge will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

The proponent of expert testimony bears the burden of establishing by a preponderance of the evidence that the admissibility requirements are met. See Fed. R. Evid. 702, Advisory Committee Notes. Although there is a presumption of admissibility, Daubert v. Merrell Dow Pharms., Inc., ("Daubert I") 509 U.S. 579, 588 (1993), the trial court is obliged to act as a "gatekeeper" with regard to the admission of expert scientific testimony under Rule 702. Id. at 597.

Daubert requires a two-part analysis. First, the court must determine whether an expert's testimony reflects "scientific knowledge," whether the findings are "derived by the scientific method," and whether the work product is "good science" - in other words, whether the testimony is reliable and trustworthy. Id. at 590 & n.9, 593. Second, the court must determine whether the testimony is "relevant to the task at hand." Id. at 597.

B.     Legal Analysis

In general, as discussed at the pretrial conference, the court finds that many of the arguments raised by defendant in this motion relate more to the legal theories and the evidence underlying Mr. Cohen's report, than to the methodology used in the report. As a result, the court construes the Daubert motion more as a motion in limine rather than as a true Daubert motion. And because both parties had a full opportunity to brief the issues raised in the motion, and had an opportunity to present further argument at the pretrial conference, the court is prepared to make the following evidentiary rulings based on the arguments presented by the parties.

First, defendant seeks to preclude Mr. Cohen from opining that the 60% discount applied to fees that were waived pursuant to the parties' contract. The language of the contract supports defendant's argument, as it provides as follows:

4

> **LTP Exclusivity**.  Client acknowledges and agrees that LTP will incur significant costs in initializing the relationship with Client, including initial setup fees and custom work charges.  In addition, LTP is providing a discount exceeding sixty percent (60%) of its standard fees.  As a consideration for LTP agreeing to waive its setup fees and custom work charges, and providing such discount, Client agrees that for the term of this Agreement LTP shall be Client's sole and exclusive provider for all distance education Content Management Systems or Learning Management Systems.

Dkt. 1, Ex. 1 at 5.

The provision first states that plaintiff will incur significant initialization costs, then sets forth the discount to its standard fees, and then provides that, in exchange for exclusivity, plaintiff will "waive its setup fees and custom work charges, <u>and</u> provid[e] such discount" (emphasis added).  Thus, the fee waiver is separate from the discount, and while plaintiff may seek reimbursement of the waived fees, it may not seek a refund of any alleged discount applied to those amounts.

The second, related issue also arises out of the same provision.  Mr. Cohen's report opines that certain fees for work performed over the life of the contract were waived, and thus should be included in any calculation of exclusivity-related damages.  However, the exclusivity provision is clear in stating that the waiver applies to costs incurred "in <u>initializing</u> the relationship" with defendant (emphasis added).  Thus, while plaintiff may seek reimbursement of fees incurred in "initializing" the services provided to defendant, it may not seek reimbursement of all waived fees.

The third issue first arose in plaintiff's opposition to defendant's <u>Daubert</u> motion, and relates to the timeframe for which damages are sought.  Plaintiff states that it now "plans to only seek repayment of discounts for fees invoiced after the first breach of the exclusivity provision," but now claims that the first breach may have occurred well before the date identified in its interrogatory responses.  Dkt. 105 at 4.  Specifically, in response to an interrogatory asking plaintiff to identify all facts related to the alleged exclusivity breach, plaintiff responded that "the breach began no later than 2013."  Dkt. 83-2, Ex. F at 7.  Plaintiff now claims that, while deposing one of defendant's witnesses, it learned

that the first breach may have occurred as early as 2010, or even earlier. However, plaintiff never supplemented its discovery responses to reflect its new theory regarding the initial breach, nor did it mention any pre-2013 breach in opposition to defendant's motion for summary judgment. See Dkt. 52 at 7-8 (alleging exclusivity breaches in 2013 and 2014, but no earlier). Plaintiff is not permitted to change its theory of the case on the eve of trial, and thus, plaintiff is precluded from alleging any exclusivity breach prior to 2013.

Fourth, defendant seeks to preclude Mr. Cohen from offering testimony that plaintiff is entitled to prejudgment interest. The court first finds that the contract is silent as to the amount of interest in the case of disputed payments. Defendant argues that such silence indicates that interest is precluded, but the court disagrees. Instead, the applicable rule comes from California Civil Code section 3287, which provides for a 10% interest rate, but has been interpreted by the courts to apply only where the damages are "capable of being made certain by calculation." And the test for determining "certainty" is "whether the defendant actually knows the amount owed or could have computed the amount from reasonably available information."

As applied to this case, the sheer number of legitimate factual disputes prevents the court from finding that either party actually knew the amount owed or could have computed the amount from reasonably available information. Thus, plaintiff is precluded from presenting testimony regarding prejudgment interest.

For the foregoing reasons, defendant's motion is GRANTED in part and DENIED in part. To the extent that defendant's motion seeks any relief other than that stated above, it is denied. In particular, the court notes that defendant's motion re-asserts an argument made in its motion for partial summary judgment – that plaintiff is not entitled to a refund of the 60% discount provided in the parties' contract. The court rejected that argument during summary judgment, and finds no basis to revisit it here (though it does clarify, as it did at the pretrial conference, that the court has not accepted plaintiff's damages theory – it merely found that the issue may be presented to the jury).

1    Finally, at the pretrial conference, the court noted that both parties concede that
2 some of the calculations in the Cohen report may be inaccurate – either because
3 incorrect rates were used by Mr. Cohen, or because the underlying invoices reflected
4 incorrect rates.  As discussed at the conference, the parties are to meet and confer
5 regarding these miscalculations and submit a stipulation regarding the correction of any
6 incorrect figures.

7 III.   VOIR DIRE

8    As discussed at the pretrial conference, the court will include joint questions 2, 3, 8
9 and 9 (to be combined into one question), 13 and 14 (to be combined), 15, 16, and 17
10 and 18 (to be combined) in its jury questionnaire.  The court will also include plaintiff's
11 proposed questions 3 and 4.  The parties shall submit a joint filing, containing all revised
12 voir dire questions, by **January 15, 2016**.

13 IV.   JURY INSTRUCTIONS

14    At the pretrial conference, the court addressed a subset of the jury instructions, but
15 deferred a determination of the remaining instructions until after the parties' supplemental
16 briefing regarding affirmative defenses (which will be more fully discussed below).
17 Specifically, the court indicated that it would not allow plaintiff's proposed instruction 1.15
18 (questions to witnesses by jurors), 4.1 (corporations and partnerships), 316
19 (interpretation – meaning of technical words), but would allow plaintiff's proposed
20 instruction 312 (substantial performance).  Regarding defendant's proposed instructions,
21 the court indicated that it was unlikely to allow instructions that were based only on case
22 law.  The court will re-address this issue after the parties submit supplemental briefing.

23 V.   VERDICT FORM

24    As with the jury instructions, the court defers a determination on the verdict form
25 until it receives further briefing regarding the asserted affirmative defenses.

26 VI.   TRIAL SCHEDULE AND TIME LIMITS

27    The duration of the trial shall be 5 days (Monday, Tuesday, Thursday, and Friday,
28 from 8:30 a.m. to 1:30 p.m., with two 15-minute breaks).  Jury selection will occur on the

first day, as will opening statements (time permitting).  During the remaining four days, each side shall have 9 hours to present their case.  Closing arguments, final jury instructions, and deliberations are not included within the 5-day trial allotment.

VII.   **FINAL COMMENTS**

As mentioned above, the parties are to submit the revised voir dire questions by **January 15, 2016**.

The parties shall also submit briefing on issues of (1) the applicability of a comparative fault defense, and (2) the applicability of the asserted affirmative defenses in general, including whether they are to be decided by the court or by a jury.  The parties are further directed to avoid affirmative defenses that are duplicative or that largely overlap with each other.  Each party may submit a supplemental brief, not to exceed ten (10) pages, no later than **January 15, 2016**.  Each party may also submit a response, not to exceed ten (10) pages, by **January 22, 2016**.  No replies are permitted.

Finally, the court notes one potential point of confusion that arose during the pretrial conference.  Plaintiff appeared to indicate that part of its damages calculation stemmed from lost revenue caused by the alleged capacity/usage issues.  Although the court is unclear as to whether plaintiff actually intends to pursue this theory, to avoid any confusion, the court will hold plaintiff to the representation made in the joint pretrial statement that it "will not present any evidence regarding alleged general business losses (e.g., the alleged 120 inquiries LTP received and was unable or unwilling to respond to while addressing server and capacity issues and Mr. Athanasios' estimate of the number of clients LTP would have acquired had LTP followed up on those inquiries)."  Dkt. 87 at 7.

**IT IS SO ORDERED.**

Dated:  December 18, 2015

_____
PHYLLIS J. HAMILTON
United States District Judge