UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEARNING TECHNOLOGY PARTNERS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNIVERSITY OF THE INCARNATE WORD,<br><br>　　　　Defendant. | Case No. 14-cv-4322-PJH<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION** |

Before the court is plaintiff's motion for reconsideration of a portion of the court's pretrial order. Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES plaintiff's motion as follows.

Through this motion, plaintiff Learning Technology Partners ("plaintiff" or "LTP") asks the court to reconsider the portion of its pretrial order holding that plaintiff is precluded from alleging that the exclusivity provision of the parties' contract was breached prior to 2013. See Dkt. 116 at 5-6. The court based its ruling on an interrogatory response of plaintiff's, where it was asked to identify all facts related to the alleged exclusivity breach, and responded that "the breach began no later than 2013." See id. (citing Dkt. 83-2, Ex. F at 7).

At the pretrial conference, the court noted that plaintiff was now contending that the first breach may have occurred as early as 2010, or even earlier, and asked plaintiff's counsel why they did not supplement the interrogatory response. Plaintiff's counsel

1    responded by telling the court that he did not know of the earlier breach until taking
2    defendant's Rule 30(b)(6) deposition.  See Dkt. 133 at 64.  The court then asked "when
3    you took the depositions and realized that the conduct preceded this date" (referring to
4    2013), "did you supplement your disclosures to assert the breach?"  Id. at 69.  Plaintiff's
5    counsel answered that he did not, because of the discovery judge's "standing order that
6    says you can't supplement your disclosures after 30 days before the close of discovery."
7    Id.  The court expressed skepticism that "a judge of this court would preclude people
8    from" supplementing their responses, especially in light of Rule 26(e)'s imposition of a
9    duty to supplement; and indeed, the discovery order in question expressly referenced
10   Rule 26(e)'s duty to supplement, and then provided that "[i]n addition to the general
11   requirements of Rule 26(e)(1), the parties will supplement and/or correct all previously
12   made disclosures and discovery responses 28 days before the fact discovery cutoff
13   date."  See Dkt. 34 at 2.  Thus, the discovery order did not preclude the parties from
14   supplementing their responses, but rather required the parties to supplement 28 days
15   before the close of discovery, and reiterated the parties' separate and ongoing duty to
16   supplement.
17       On this motion, plaintiff takes a different tack.  Rather than arguing that it was
18   precluded from supplementing its interrogatory response, it now argues that there was no
19   need to supplement the response, because the information about the pre-2013 breach
20   was already known to defendant.  In its motion for reconsideration, plaintiff provides a
21   bullet-pointed list of evidence purporting to show defendant's knowledge of the pre-2013
22   breach theory.
23       The first piece of evidence is the original complaint filed in this case in August
24   2014, which alleged that defendant's chief technology officer "discussed the use of the
25   competing service Blackboard in a YouTube video posted in 2011."  Dkt. 123 at 4 (citing
26   Dkt. 1, Ex. A at ¶ 42(a)).  However, despite making this allegation in the complaint, it
27   appears that plaintiff has abandoned its contention that defendant's use of Blackboard in
28   2011 (or earlier) constituted an exclusivity breach.  In fact, in this very motion, plaintiff

1    cites to the deposition testimony of its own Rule 30(b)(6) witness (which will be discussed
2    further below), and describes it as follows:  "UIW asked what LTP considered to be
3    breaching conduct, and LTP identified two violations:  (1) the use of Blackboard in 2014,
4    and (2) 'the use of Apex early on.'"  Dkt. 123 at 4-5 (internal citations omitted).  Similarly,
5    in its request for leave to file this motion for reconsideration, plaintiff argued that it sought
6    reconsideration in order to present evidence "that it alleged that UIW breached the
7    exclusivity provision as early as 2010 by using a competing product called Apex Learning
8    for its online high school, UIW Prep."  Dkt. 117 at 2 (emphasis added).  Indeed, plaintiff's
9    motion for leave made no mention of a pre-2013 use of Blackboard, only a pre-2013 use
10   of Apex.  It appears that plaintiff is attempting to muddle the issue by treating Blackboard
11   and Apex interchangeably, at least for purposes of this motion.  However, if plaintiff
12   intends to show that defendant was on notice of its theory that the pre-2013 use of Apex
13   constituted an exclusivity breach, it cannot make that showing by pointing to an allegation
14   regarding the pre-2013 use of Blackboard.  Thus, the court finds that the complaint's
15   reference to a YouTube video demonstrating the use of Blackboard is irrelevant to the
16   current motion.
17         Next, plaintiff points to a discovery dispute that occurred between May and June
18   2015.  Plaintiff argues that it filed a motion to compel, in part to obtain documents
19   showing defendant's use of Apex, and that "UIW agreed to and did produce some
20   invoices."  Dkt. 123 at 4.  Plaintiff also attaches one of the invoices, which "demonstrates
21   UIW's use of Apex back to 2010."  Id.  However, while defendant surely knew that it used
22   Apex at least as early as 2010, there is no indication that plaintiff gave notice to
23   defendant that it considered such use to be an exclusivity breach.  In fact, plaintiff cites a
24   portion of its motion to compel where it stated that it "has evidence that the software it
25   provided to UIW was linked at least to that of its competitors, Datatel and Apex" (Dkt. 123
26   at 4 (citing Dkt. 29 at 11)), but there is no indication that it now considers defendant's use
27   of Datatel to constitute a breach.  Plaintiff offers no explanation as to why this discovery
28   dispute would have put defendant on notice that its use of Apex was considered to be a

breach, but its use of Datatel was not.  Thus, the court finds the production of Apex-related documents to bear little relevance to the current motion.

Next, plaintiff cites to the previously-mentioned deposition of its Rule 30(b)(6) designee, Reda Athanasios.  And as mentioned above, when asked what LTP considered to be breaching conduct, Athanasios "identified two violations:  (1) the use of Blackboard in 2014, and (2) 'the use of Apex early on.'"  Dkt. 123 at 4-5 (internal citation omitted).  Indeed, the deposition transcript bears this out, as Athanasios was asked to identify the conduct that constituted a breach of section 7.6 of the parties' contract, and he said "I'm referring to the use of Apex early on and the use of Blackboard later on."  Dkt. 126, Ex. 2 at 65:18-19.  Putting aside the fact that Athanasios' reference to "early on" does not put defendant on notice that plaintiff was claiming a breach as early as 2010, defendant also points out another issue with Athanasios' deposition testimony.  Later in the same deposition, Athanasios was asked if he was "aware of any actual breaches of exclusivity provision prior to 2013," and he said "No."  Dkt. 130, Ex. I at 228:25-229:2.  Thus, while the deposition testimony does indicate that plaintiff considered defendant's use of Apex to be a breach, it is at best vague as to timing, and at worst, it disclaims any breach prior to 2013.  The court will revisit the effect of this testimony after considering the other evidence presented by the parties.

Next, plaintiff argues that "UIW's questions during depositions and requests for admissions demonstrate that UIW understood that LTP alleged that the use of Apex Learning by UIW Prep back to 2010 was part of the allegations in this case."  Dkt. 123 at 5.  Plaintiff's reference to "questions during depositions" appears to refer to the same testimony mentioned in the previous paragraph, and the court need not address that testimony again here.  The referenced requests for admissions do show that defendant asked plaintiff to admit that it "knew of UIW's use of Apex Learning for UIW Prep no later than" 2010, 2011, 2012, or 2013.  Dkt. 126, Ex. 3 at 4-5.  These requests for admission do indeed establish that defendant believed its use of Apex, going back to 2010, to be relevant to the case in some way, but they do not establish that defendant understood

4

that its use of Apex was considered by plaintiff to be a breach of the exclusivity provision of the parties' contract. Thus, the court finds the requests for admission to be of limited value to the present motion.

Next, plaintiff argues that defendant's Rule 30(b)(6) witness testified in her deposition that "UIW's main campus operated online-only classes since at least 2010." Dkt. 123 at 5. However, plaintiff does not adequately explain how this testimony reflects any understanding that plaintiff alleged a breach of exclusivity, based on the use of Apex, dating back to 2010. Instead, the testimony reflects only what it says, that defendant "operated online-only classes since at least 2010." Thus, the court finds this deposition testimony to be irrelevant to the present motion.

The next three pieces of evidence cited by plaintiff all come from the pretrial papers. Specifically, plaintiff points to its own trial brief, to defendant's trial brief, and to defendant's opposition to plaintiff's motions in limine. However, these documents were filed well after the close of discovery, and plaintiff cannot rely on them to establish that defendant had adequate notice of its theory of breach at a time when it mattered – i.e., when it could still seek discovery in an attempt to defend against the allegation. In precluding the pre-2013 evidence of breach, the court held that plaintiff "is not permitted to change its theory of the case on the eve of trial," and the court will not reconsider that ruling on the basis of documents that were filed on the eve of trial. Thus, the court finds the trial briefs and the motion in limine papers to have no bearing on the current motion.

Finally, plaintiff seeks to introduce its written mediation brief as further evidence that it provided notice of its breach theory to defendant. However, this court's local rules specifically prohibit the parties from disclosing their mediation briefs to the assigned judge. ADR L.R. 6-12(a)(2). Accordingly, the court will not consider plaintiff's mediation brief.

Thus, having considered all of the evidence cited by plaintiff, the court is left with the deposition testimony of plaintiff's Rule 30(b)(6) witness, who testified that the use of Apex "early on" constituted a breach, and who also testified in the same deposition that

he was not aware of any breach prior to 2013. However, before determining whether this testimony is sufficient to warrant reconsideration of the challenged portion of the pretrial order, the court will first consider the evidence cited by defendant. In particular, the court finds highly relevant a sequence of events occurring between May and June 2015.

Defendant cites to an email exchange between its counsel and plaintiff's former counsel on May 5, 2015, in which they discuss the substance of an apparent telephone call between them. Plaintiff's counsel wrote: "You told me during our call that LTP's software was linked to Apex for UIW Prep. You told me that this was done with LTP's authorization. My client informs me that this is not true." Dkt. 130, Ex. C at 1. Defendant's counsel then responded: "With respect to Apex, my understanding is that it was used at the same time as Izio." Id.

About a month later, on June 4, 2015, plaintiff responded to a set of interrogatories propounded by defendant. One of them asked plaintiff to "[s]tate all facts related to your allegations in paragraphs 41-42 of the complaint that UIW breached section 7.6 of the contract" (referring to the exclusivity provision). Dkt. 130, Ex. E at 6. After making a number of objections, plaintiff then answered that "UIW breached section 7.6 by using other providers of Content Management and Learning Management systems for several distance education Content Management and Learning Management Systems," and then specifically addressed the alleged breach related to UIW Prep. Specifically, plaintiff stated that it "believes the breach began no later than 2013, when UIW stopped enrolling students in the UIW Preparatory School IZIO classes." Id. at 7. There is no mention of Apex, even though counsel had discussed defendant's use of Apex "at the same time as Izio" one month beforehand. Interestingly, while there is no mention of Apex in the interrogatory response, the response does specifically mention defendant's use of Blackboard "starting in at least in [sic] June 2014." Id.[1]

---

[1] The court also notes that there is no mention of the 2011 YouTube video showing defendant's use of Blackboard, which provides further support for the conclusion that plaintiff abandoned that allegation sometime after including it in the complaint.

6

The timing of these interrogatory responses clarifies the court's understanding of the issue. Whereas the court previously understood the issue as centering around plaintiff's failure to <u>supplement</u> an already-existing interrogatory response under Rule 26(e), the new evidence shows that the issue is actually about plaintiff's failure to provide a complete interrogatory response in the first instance. And while plaintiff's subsequent Rule 30(b)(6) deposition testimony does attempt to re-insert Apex into the case, it cannot overcome plaintiff's failure to mention either Apex, or any pre-2013 breach, in its interrogatory response.

Finally, even if the issue were limited to plaintiff's failure to supplement, the court notes that, in this case, the language of Rule 26(e) does not support plaintiff's position that, if the pre-2013 breach theory was already known to defendant, there was no duty to supplement. The rule provides that a party has a duty to supplement:

> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing, or
>
> (B) as ordered by the court.

The court notes that subsection (B) does not contain any exception for a scenario where "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." In other words, if the court orders supplementation under subsection (B), all incomplete or incorrect information must be supplemented, regardless of the other party's knowledge. And as mentioned above, Judge Laporte ordered the parties to "supplement and/or correct all previously made disclosures and discovery responses 28 days before the fact discovery cutoff date." Dkt. 34 at 2. As the fact discovery cutoff date was August 14, 2015, the deadline for supplementation was July 17, 2015. Thus, even if plaintiff believed that defendant was aware of its pre-2013 breach theory, it still had a duty to supplement its interrogatory response by that date, per Judge Laporte's order. In light of plaintiff's failure to disclose

any allegations of a pre-2013 breach in its June 4, 2015 interrogatory response, and in light of its failure to supplement that response by July 17, 2015, the court finds that plaintiff's motion for reconsideration must be DENIED.

**IT IS SO ORDERED.**

Dated:  January 28, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge